IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **VIVINT, INC.**, a Utah corporation, <br><br>       **Plaintiff,** <br> vs. <br><br> **CRAIG BAILIE**, an individual; **JONATHAN ANTHONY**, an individual; **ARMOR PROTECTION, LLC**, a Missouri limited liability company; and **JOHN DOES I through XX,** <br><br>       **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No.  2:15-CV-685-DAK <br><br> Judge Dale A. Kimball |

  This matter is before the court on Defendant Jonathan Anthony's Motion to Dismiss for Lack of Jurisdiction. A hearing on the matter was held on January 9, 2017. At the hearing, Plaintiff was represented by Jonathan Bletzacker and Trent Lowe. Defendant was represented by D. Brian Boggess. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

BACKGROUND

  In February 2011, Defendant Jonathan Anthony became employed with APX Alarm ("APX"). In August 2011, APX changed its name to Vivint, Inc. ("Vivint"). Vivint is a Utah corporation with its headquarters in Utah and is the Plaintiff in this action.

  Since 2009, Mr. Anthony has been a resident of Missouri. Before 2009, Mr. Anthony was a resident of Kansas and Illinois, but never of Utah. Mr. Anthony heard about APX and the potential for a job from another APX employee in St. Louis Missouri. Mr. Anthony applied for

1

the job through APX's Missouri-based management. Mr. Anthony was hired as a Field Service Technician and was given work in and around Saint Charles, Missouri. He worked for Vivint in Saint Charles, Missouri, until approximately February 2015 when he was offered a position as a Service Manager with Vivint in Chicago, Illinois.

Mr. Anthony has visited Utah only once. He traveled to Utah for three days of training when he was first hired by APX in early 2011.

On September 22, 2015, Vivint filed a Complaint in this court against Defendants Craig Bailie, Armor Protection, LLC ("Armor"), and John Does I-XX. On July 28, 2016, Vivint filed an Amended Complaint, which added Mr. Anthony as a Defendant. In relation to Mr. Anthony, the Amended Complaint alleges that Mr. Anthony had restricted access to some of Vivint's trade secret information and that Mr. Anthony conspired together with Mr. Bailie to unlawfully obtain access to the trade secret information by accessing a password-protected database, which is located in Utah, without authorization or by receiving and accepting access to the trade secret information through a third party, or both. Vivint then alleges that Defendants used the trade secret information to approach Vivint customers in Missouri, Arkansas, and Illinois to convince them to enter into a contract with Armor. The Amended Complaint was served on Mr. Anthony at his home address in Missouri.

On September 16, 2016, Mr. Anthony filed a Motion to Dismiss for Lack of Jurisdiction claiming that this court lacks personal jurisdiction over Mr. Anthony.

## DISCUSSION

In his Motion to Dismiss for Lack of Jurisdiction, Mr. Anthony argues that he lacks minimum contacts with Utah sufficient for this court to exercise personal jurisdiction over him. The court will analyze his arguments below.

**STANDARD OF REVIEW**

In any federal court proceeding, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Benhagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* In the court's analysis of the factual evidence, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* "When evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008); *see also Benhagen*, 744 F.2d at 733 ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.") "If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further." *Klein Frank, P.C. v. Girards*, 932 F. Supp. 2d 1203, 1208-09 (D. Colo. 2013).

**PERSONAL JURISDICTION**

In order for a court "to subject a particular defendant to the decisions of the court," the court must first have personal jurisdiction over the defendant. *Rocky Mountain Claim Staking v. Frandsen*, 884 P.2d 1299, 1301 (Utah Ct. App. 1994). A court may have either general or specific personal jurisdiction over a defendant. "General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted and is dependent on a showing that the defendant conducted substantial and continuous local activity in the forum state." *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 949 (Utah 2008) (internal

quotation marks and citation omitted). "Specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state and only if the defendant has certain minimum local contacts." *Id.* at 949-50 (internal quotation marks and citation omitted). Vivint only asserts that the court has specific personal jurisdiction over Mr. Anthony, so the court will only perform a specific personal jurisdiction analysis.

In Utah, the proper analysis for a court to determine if it can exercise specific personal jurisdiction over a defendant has three parts: "(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999). Although the requirements of federal due process are listed last in the specific personal jurisdiction analysis, the Utah Supreme Court and the Tenth Circuit "frequently make a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). The Utah Legislature codified the policy for its long-arm statute, including the provision that "to ensure maximum protection to citizens of this state, [the statute] should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-210(3); *see also Hunsaker v. Am. HealthCare Capital*, 340 P.3d 788, 792 (Utah Ct. App. 2014) ("Given the statute's breadth, we often assume the application of the statute—and go straight to the due process issue."

(internal quotation marks and citation omitted)). Therefore, the court will address the requirements of federal due process first in its specific personal jurisdiction analysis.

**Due Process**

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citation omitted). "A two-step analysis is required to determine whether jurisdiction over nonresident defendants is permitted under the Fourteenth Amendment." *Tombstone Expl. Corp. v. EuroGas, Inc.*, 2015 WL 5883327, at *2 (D. Utah Oct. 8, 2015) (unpublished).

> First, the defendants must have such minimum contacts with the forum state that [they] should reasonably anticipate being haled into court there. If the defendants do have minimum contacts with the forum, the analysis proceeds to the second requirement, which is determining whether the exercise of personal jurisdiction over the defendant[s] offends traditional notions of fair play and substantial justice.

*Id.* (citations omitted); *see also Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706, 710 (Utah 2006). The court will address each step in the two-step analysis in that order.

*Minimum Contacts*

The first step in the due process analysis for specific personal jurisdiction is to determine if the defendant has sufficient minimum contacts with the forum state to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A plaintiff can establish sufficient minimum contacts by showing that a defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injures that arise out of or relate to those activities. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (citation omitted); *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995) ("When the conduct is intentional and is directed at

a victim in another state, the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that the victim will bring suit for redress there.").

In other words, a court seeks to determine whether a defendant has "purposefully availed itself of the privilege of conducting activities within the forum state," which can be shown if the defendant "purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d at 1277 (citation omitted). "Thus, defendants do not need to be physically present in the forum, so long as the foundational activities of the underlying action arise out of or relate to the contacts." *Tombstone Expl. Corp.*, 2015 WL 5883327, at *2 (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006)). "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Pro Axess, Inc.*, 428 F.3d at 1277 (citing *Burger King Corp.*, 471 U.S. at 473). The court will look at a defendant's actions toward the forum state collectively, rather than in isolation. *See Sys. Designs, Inc. v. New Custom Ware Co.*, 248 F. Supp. 2d 1093, 1104 (D. Utah 2003).

Mr. Anthony argues that he lacks minimum contacts with Utah sufficient for the court to exercise personal jurisdiction over him. On the other hand, Vivint argues that Mr. Anthony has both "reached out" to Utah and has also "created continuing relationships and obligations" with Vivint and co-Defendant Craig Bailie in Utah. The court believes that Mr. Anthony has sufficient minimum contacts with Utah for the court to exercise specific personal jurisdiction over him.

Although Mr. Anthony was never a resident of Utah, the uncontroverted facts in the Complaint show that he purposefully directed activities at Utah that are directly connected to

6

Vivint's claims against him in this case. First, in the Complaint, Vivint alleges that Mr. Anthony logged into servers located in Vivint's corporate offices in Utah via a Virtual Private Network (VPN) connection, that he removed information about Vivint's customers from those servers, and that he used that information to solicit Vivint's customers in in Missouri, Arkansas, and Illinois. "Numerous courts have exercised personal jurisdiction over nonresident defendants where the minimum contacts with the forum consisted of committing a tort through accessing a server located in the forum state." *Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, Civil Action No. H-12-1168, 2013 WL 820589, at *5 (S.D. Texas Mar. 5, 2013) (listing courts that have found personal jurisdiction based on accessing a server located in the forum state). In this case, the Complaint suggests that Mr. Anthony was aware of the location of the servers in Utah and that he used the information provided by Vivint to access the servers for the unauthorized purpose of obtaining information about Vivint's customers. Taking the allegations as true, Vivint's claims arise out of and result from Mr. Anthony's purposeful accessing of the servers that are located in Utah. Vivint claims injuries that, not only relate to, but also arise out of Mr. Anthony's alleged activities. Mr. Anthony's alleged unauthorized access of Vivnt's servers for the purpose of converting Vivint's customers is the foundation of Vivint's claims.

In addition to the substantial connection with Utah created by accessing the servers and obtaining information from them, Mr. Anthony has other connections with Utah related to Vivint's claims in this case. For example, Vivint alleges in the Complaint that Mr. Anthony conspired with another Utah resident and past Vivint employee, Craig Bailie, in their attempt to take over Vivint's customers. Mr. Anthony also created continuing relationships and obligations in Utah by becoming an employee of Vivint, a Utah corporation, and by executing a Non-Disclosure Agreement, which, by its terms, is governed by the laws of the state of Utah. *See*

*Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E. D. Penn. 2016) (concluding that, by signing a non-disclosure agreement with a Pennsylvania choice-of-law provision, the defendants "knew that Pennsylvania was the legal fulcrum for their contractual obligations").

Finally, taking Vivint's allegations as true, Vivint's alleged injuries arise out of or relate to Mr. Anthony's intentional tortious acts directed at Vivint. Mr. Anthony purposefully directed his intentional tortious acts towards Vivint, a Utah corporation, by improperly accessing Vivint's corporate network in Utah via a VPN connection for the purpose of learning customer information and attempting to take over the customers. After obtaining the unlawful information, Mr. Anthony shared the confidential information with Mr. Bailie, a past Vivint employee and Utah resident, in a conspiracy to convert customers from Vivint to Defendant Armor Protection. Vivint alleges that its damages arise out of Mr. Anthony's direct contacts with this forum.

The court concludes that Mr. Anthony's contacts with Utah, taken collectively, are sufficient for the court to exercise specific personal jurisdiction over him related to Vivint's claims in this case.

*Traditional Notions of Fair Play and Substantial Justice*

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (internal citations omitted). Relevant factors may include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (internal

quotation marks and citation omitted); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif.*, 480 U.S. 102, 113-14 (1987). Although these factors are generally considered to "defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities," *Pohl, Inc.*, 201 P.3d at 949, "[t]hese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.*, 471 U.S. at 476.

After weighing the relevant factors, the court concludes that its exercise of specific personal jurisdiction over Mr. Anthony would not offend traditional notions of fair play and substantial justice. Although Mr. Anthony would likely experience some financial hardships and inconvenience by litigating this action in Utah, Utah has a strong interest in adjudicating the dispute because Utah is home to Vivint, the victim of Mr. Anthony's alleged intentional tortious acts; to Vivint's database housing the confidential information; and to Mr. Bailie, Mr. Anthony's co-defendant and co-conspirator. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-staters."). Utah was also chosen as the choice of law on Mr. Anthony's Non-Disclosure Agreement. *See Pro Axess, Inc.*, 428 F.3d at 1280 ("[The] state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."). Litigating the action in Utah also serves the interest of obtaining the most efficient resolution of the controversy because exercising jurisdiction here avoids piecemeal litigation, which would result because Mr. Anthony's alleged co-conspirator, Mr. Bailie, has already submitted to jurisdiction in this court.

Therefore, the court concludes that its assertion of jurisdiction over Mr. Anthony would comport with traditional notions of fair play and substantial justice.

**Nexus**

The second part of Utah's three-part test for specific personal jurisdiction requires a court to determine if a "nexus" exists "between the plaintiff's claims and the defendant's acts or contacts." *Soma Med. Int'l*, 196 F.3d at 1297. The court agrees with the observation in *Pro Axess, Inc. v. Orlux Distribution, Inc.* that the "nexus" analysis is "analogous to part of the minimum contacts due process analysis," which the court performed above. *Pro Axess, Inc.*, 428 F.3d at 1282; *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) (determining "whether a nexus exists between Defendant's forum-related contacts and the Plaintiff's cause of action" as part of the minimum contacts analysis); *Synergetics By & Through Lancer Indus., Inc. v. Marathon Ranching Co., Ltd.*, 701 P.2d 1106, 1110 (Utah 1985) (recognizing that "the relationship of the defendant, the forum, and the litigation, to each other" is a "central concern" of the traditional notions of fair play and substantial justice analysis). In this case, a separate analysis on the nexus prong is not necessary because the court has already concluded that Vivint's claims are directly related to, and arise from, Mr. Anthony's alleged actions that were targeted at Vivint and Vivint's servers in Utah.

**Utah's Long-Arm Statute**

The final prong in Utah's specific personal jurisdiction analysis is determining whether the defendant's acts or contacts implicate Utah under Utah's long-arm statute. *Soma Med. Int'l*, 196 F.3d at 1297. As discussed above, both the Utah Supreme Court and the Utah legislature have stated that "any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998), *see also* Utah Code Ann. § 78B-3-210(3) (explaining the Utah's long-arm statute is meant to "assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process

clause of the Fourteenth Amendment to the United States Constitution"). Because the court has already determined that exercising specific personal jurisdiction over Mr. Anthony is permitted by the due process clause, the court also concludes that Mr. Anthony's acts and contacts implicate Utah under Utah's long-arm statute.

However, the court notes the Mr. Anthony's alleged actions also implicate Utah under the express terms of Utah's long-arm statute. Utah's long-arm statute extends jurisdiction to claims arising out of or related to "the causing of any injury within the state whether tortious or by breach of warranty." Utah Code § 78B-3-205(3). Vivint has alleged that Mr. Anthony's tortious conduct has caused injury to Vivint in Utah. *See Pohl, Inc.*, 201 P.3d at 952 (clarifying that, to satisfy the terms of Utah's long-arm statute, "a plaintiff must allege only that the defendants caused a tortious injury in Utah and that the plaintiff's claims arise out of the tortious injury").

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Mr. Anthony's Motion to Dismiss for Lack of Jurisdiction is DENIED.

DATED this 30th day of January, 2017.

BY THE COURT:

*Dale A. Kimball*

DALE A. KIMBALL
United States District Judge